People v Velasquez (2025 NY Slip Op 25258)

[*1]

People v Velasquez

2025 NY Slip Op 25258

Decided on December 2, 2025

Supreme Court, Queens County

Kirschner, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 2, 2025
Supreme Court, Queens County

The People of the State of New York

against
Charley Velasquez, DEFENDANT.

Indictment No. 72200/2024

Sean McNicholas, Esq., Attorney for Charley Velasquez
917-885-3167
seanlawoffice@yahoo.com
Marina Shew
718-298-3234
mdshew@queensda.org
Assistant District Attorney
Office of the Queens District Attorney

David J. Kirschner, J.

By indictment filed May 31, 2024, defendant is charged with criminal possession of a weapon in the second degree (PL § 265.03 [1] [b]), a class C violent felony, criminal possession of a weapon in the third degree (PL § 265.02 [8]), a class D violent felony, assault in the second degree (PL § 120.05 [2]), a class D violent felony, reckless endanegerment in the first degree (PL § 120.25 [1]), a class D felony, and other related charges.
These charges stem from events alleged to have occurred on February 24, 2024, at approximately 7:00 a.m., inside the second floor of 62-22 60th Avenue in Queens County, in that defendant allegedly slapped the complainant, his fiancée, resulting in a bloody nose, then struck the back of her head with a firearm. The firearm subsequently discharged, resulting in partial hearing loss in her left ear. Upon the complainant's consent, officers searched the premises, yielding the recovery of a Polymer 80 9mm ghost gun from the bedroom closet containing seven rounds of live ammunition in a 17-round capacity magazine and a shell casing in the chamber. Officers also recovered 11 loose rounds of ammunition inside a Ziplock bag from the hamper.
On November 18, 2025, immediately before the commencement of jury selection, this Court entertained several People's preliminary applications. Among them was to elicit testimony [*2]of defendant's DNA profile developed from an abandonedment sample obtained and a buccal swab obtained by court order in connection with a 2019 case. Defendant was convicted in that case of criminal possession of marijuana in the fourth degree (PL § 221.16), a class A misdemeanor, which was later expunged by operation of law pursuant to CPL § 160.50 (5). Defendant opposes.
Consequently, this Court is called upon to decide whether any evidence, material, or documents generated from defendant's now expunged 2019 marijuana conviction — most notably the abandonment sample, the court ordered buccal swab, and any laboratory profiles, reports, notes, or database entries derived from them — may be used as biological comparison materials in the present prosecution. For the reasons set forth below, the statutory scheme mandating the expungement of certain marijuana convictions under CPL § 160.50 (5) compels the conclusion that such material is not admissible in any fashion.
According to CPL § 1.20 (45), the New York Criminal Procedure Law provides that "expunge" means that an arrest "is deemed a nullity and the accused is restored, in contemplation of the law, to the status such individual occupied before the arrest, prosecution and/or disposition; that records of such arrest, prosecution and/or disposition shall be marked as expunged or shall be destroyed as set forth in section 160.50 of this chapter." But the analysis hardly ends here.
Although CPL § 160.50 generally applies to the sealing of matters, subdivision (5) addresses the expungement of specified marijuana convictions (emphasis supplied). Specifically, CPL § 160.50 (5) mandates that such a convicition "shall, on and after the effective date of this paragraph, in accordance with the provisions of this paragraph, be vacated and dismissed, and all records of such conviction or convictions and related to such conviction or convictions shall be expunged, as described in subdivision forty-five of section 1.20 of this chapter, and the matter shall be considered terminated in favor of the accused and deemed a nullity, having been rendered by this paragraph legally invalid. All such records for an offense described in this paragraph where the conviction was entered on or before the effective date of the chapter of the laws of 2019 that amended this paragraph shall be expunged promptly and, in any event, no later than one year after such effective date." But it hardly ends here.
CPL § 160.50 (5) (b) (i) further obligates the Office of Court Administration and DCJS to exclude references to expunged convictions from criminal history reports and to mark or destroy court records conspicuously. The statute also provides for the destruction of records upon written request. Further underscoring the Legislature's intent that such records, marked as expunged, not be used in any capacity to the deterement of a criminal defendant, the statute specificially provides that "such records and papers shall not be made available to any person, except the individual who case has been expunged or such person's designated agent" (CPL § 160.50 [5] [b] [i]).
Read together, these statutory provisions do more than create a privacy interest for an individual whose conviction has been expunged; they declare certain convictions a legal nullity, mandate vacatur and dismissal, and impose categorical, statutory limits on dissemination and use of all records "related to" the expunged conviction (emphasis supplied). The Legislature's use of "nullity" along with the instruction that records "shall not be made available to any person" reflects a clear intention to deny continuing legal effect to the conviction and to prevent downstream use of materials generated by the expunged proceeding.
The buccal swab and abandonment sample collected in 2019, and the DNA profile, [*3]laboratory reports, chain of custody entries, DCJS database entries, and any internal law enforcement or external OCME forensic files produced from them plainly fall within the statutory category of "records . . . related to such conviction or convictions." Admission of such material — or of any evidentiary product derived from them — would directly contravene the statute's prohibition on making expunged records available and would render the statutory effect of expungement illusory.
Irrespective of the People's claim that defendant had an affirmative duty to request the destruction of such material, the lawfulness of a sample's original collection does not resolve the present question. The DNA profile subitable for comparison, created because of the now expunged 2019 matter, is the functional product of that proceeding. Admitting any such profile or admitting testimony or expert comparisons that rely on it would import into this case the very record the statute commands be treated as a nullity. And producing an ostensibly independent sample from the firearm recovered in this case, compared to a profile derived from expunged material, effectively reintroduces the expunged record. Thus, where, as here, a statutory regime expressly forbids disclosure and requires exclusion of records "related to" an expunged conviction, the use of derivative evidence should also naturally be precluded absent a showing of a genuinely independent DNA profile obtained from defendant suitable for comparison unconnected to the expunged matter.
Though the People correctly observe that CPL § 160.50 (5) (b) (i) provides for record destruction "upon the written request of the individual whose case has been expunged or their designated agent," this provision plainly contemplates that, as a practical matter, destruction shall follow a defendant's affirmative request. That concession, however, does not assist the People in permitting current prosecutorial use of expunged materials. Two critical statutory commands that precede and accompany the destruction provision foreclose it.
First, even when destruction has not yet been effected, the statute requires that records "shall be marked as expunged" — i.e., court records must be conspicuously designated as expunged on their face and in digitized files. Second, and dispositively, the statute states in unqualified terms that unless and until destruction occurs, the records "shall not be made available to any person, except the individual whose case has been expunged or such person's designated agent" (CPL § 160.50 [5] [b] [i]) (emphasis supplied). Such plain language, therefore, creates an express interim prohibition: marking substitutes for immediate destruction, and that marked status carries a categorical bar on access by third parties, including non-law enforcement bodies such as the Office of the Chief Medical Examiner.
Moreover, the People's reliance on the destruction upon request language overlooks that the statutory ban on availability is not contingent on the defendant's request for destruction. The Legislature afforded a mechanism for destruction on request, but it simultaneously and affirmatively imposed a duty of non disclosure in the interim. Permitting third-party entities to use or disseminate expunged files, samples, profiles, or derivative data before destruction would contravene that express prohibition and reduce the marking requirement to an empty formality. The statute's structure therefore supports two independent protections: (1) marking to deny access immediately; and (2) destruction upon request to erase the record permanently if the defendant so chooses.
Practically, this means that any record marked as expunged by statute cannot lawfully be accessed by or provided to third parties (including prosecutors, law enforcement, forensic laboratories, etc.). Consequently, the use of such marked-but-not destroyed materials in this [*4]prosecution, even for comparative purposes, would violate the statutory command and frustrate the legislative intent of treating the conviction as a nullity. The People can no more rely on the absence of a destruction request to justify use of such materials than they could depend on a failure to purge a clerical entry to argue that the conviction remains a valid source of evidence.
Accordingly, this Court rejects the People's contention that failing to request destruction means the records are freely usable for comparison. Any conclusion to the contrary runs afoul of the statutory interim prohibition excluding the use of any materials marked as expunged or that have otherwise been identified as part of, related to, or stemming from the 2019 expunged matter.
For these reasons, then, any material produced or DNA reports derived by comparison with material obtained from defendant's 2019 expunged marijuana matter are not properly usable in this prosecution. To be clear, the destruction upon request provision permits no predestruction dissemination: expunged records are required to be marked as expunged and, unless and until destroyed, "shall not be made available to any person" other than the defendant or the defendant's designated agent.
This constitutes the decision and order of the Court.
Dated: December 2, 2025
E N T E R
David J. Kirschner, J.S.C.